**Al KORBA, Appellant (Plaintiff Below),**

v.

**TRANS WORLD AIRLINES, a/k/a TWA, Appellee (Defendant Below).**

No. 82A04–8609–CV–00276.

Court of Appeals of Indiana, Fourth District.

May 28, 1987.

Jeffrey A. Wilhite, Kahn, Dees, Donovan & Kahn, Evansville, for appellant.

Peter G. Tamulonis, John B. Drummy, Brent R. Weil, Kightlinger & Gray, Indianapolis, for appellee.

MILLER, Judge.

Alvin Korba brought suit against Trans World Airlines (TWA) to recover the cost of three airline tickets he was forced to purchase when El Al Israel Airlines refused to seat him on its Tel Aviv to New York flight as part of a tour arranged by TWA. The Vanderburgh Superior Court granted summary judgment, finding the suit barred by the time limitations periods of the federal tariff for TWA and the Warsaw Convention. Korba appeals, and we affirm.

## FACTS

In 1983, TWA offered a series of "super saver" tours to Israel and Egypt. Dr. Alvin Korba, his wife Jan, and his father Julius reserved places on a tour which was to depart from New York on July 17 and was to return on August 1. The excursion was to consist of several flights, including a TWA flight from New York to Cairo, Egypt, and El Al flights from Cairo to Tel Aviv, Israel and from Tel Aviv to New York.

TWA reserved seats for the Korbas on its New York to Cairo flight. TWA also attempted to use its computerized reservation system to reserve seats for the Korbas on the El Al flights, but was unable to do so because the El Al computer was off line. When the computer system did not work, TWA contacted El Al by phone and confirmed seats for the Korbas. El Al, for some unknown reason, did not actually reserve the seats even though it notified TWA that it had done so.

When the Korbas arrived in Cairo, they were informed by an agent of El Al that they had no reservations for either the El Al flight to Tel Aviv or the El Al return flight to New York; because there were available seats on the Cairo to Tel Aviv flight, however, they were able to continue on schedule with their flight to Tel Aviv, arriving July 21. When they reached Tel Aviv on that date, they again checked on their reservations for the Tel Aviv to New York flight. This time El Al not only informed the Korbas they had no reservations, it also informed them there were no available seats on any Tel Aviv to New York flights for approximately two weeks. The Korbas eventually cut short their tour by two days in order to return home on a TWA flight.

The Korbas purchased first class tickets for the return flight. Their tickets cost $1,409 more per ticket than their super saver tickets. The Korbas reached New York on July 30, 1983; Alvin Korba filed this suit on August 1, 1985.

## DECISION

Korba raises two issues for our review. He first argues TWA cannot rely on any limitations period found in the contract to bar this cause of action. He also argues that, even if TWA can rely on the limitations period, summary judgment was inappropriate here because he filed suit before the limitations period expired. In addition to disputing Korba's two arguments, TWA claims summary judgment was appropriate because any breach of contract was committed by El Al, and Korba has not stated a cause of action against TWA.

Because we are reviewing a summary judgment, the proponent of the motion has the burden of proving no genuine issue of material fact exists. *Swanson v. Shroat* (1976), 169 Ind.App. 80, 345 N.E.2d 872. We construe the facts and pleadings in the manner most favorable to the non-moving party. *Id.* Even if the facts are undisputed, we will not affirm a summary judgment if those facts could reasonably give rise to inferences which lead to conflicting results. *Letson v. Lowmaster* (1976), 168 Ind.App. 159, 341 N.E.2d 785; *Wozniczka v. McKean* (1969), 144 Ind.App. 471, 247 N.E.2d 215. However, if only legal issues remain

to be resolved, summary judgment will be affirmed. *Letson, supra.* The interpretation of a treaty is a legal question.

## I. *Applicability of the Limitations Period*

The trial court granted summary judgment because it found Korba filed this action after the expiration of the limitations period contained in a federal tariff governing TWA international flights. In response to Korba's motion to correct errors, TWA also noted the action was filed after the expiration of the two year limitations period of the Convention for Unification of Certain Rules Relating to International Transportation by Air—generally referred to as the Warsaw Convention—49 Stat. 3000 *et seq.*

Korba first argues that both the tariff limitations period and the Warsaw Convention limitations period depend upon the contract of carriage. He alleges TWA repudiated the contract and, doing so, surrendered the right to resort to any of the limitations based on the contract.

TWA urges us to forego review of this issue because Korba allegedly waived it by failing to raise it in his motion to correct error. Furthermore, TWA argues none of its actions surrendered its right to rely on the contractual limitations period.

Our rules require a party seeking appellate review to first file a motion to correct errors in order to allow the trial court the opportunity to correct any alleged error. Ind.Rules of Procedure, Trial Rule 59; *Libunao v. Libunao* (1979), 180 Ind.App. 242, 388 N.E.2d 574; *reh. denied,* 180 Ind.App. 242, 390 N.E.2d 695. Failure to raise a particular specification of error in the motion to correct error waives the right to raise the error on appeal. T.R. 59; *Cunningham v. Associates Capitol Services Corp.* (1981), Ind.App., 421 N.E.2d 681.

■ Here, Korba did not allege the tariff and Warsaw Convention limitations periods were inapplicable in his motion.[1] He did, however, raise the error in a memorandum in support of the motion which he filed some time later. Korba argues he has not waived the issue since he raised it in this memorandum. We do not agree.

The trial court entered judgment on May 13, 1986. On July 11, fifty-nine days after entry of judgment, Korba filed his motion to correct error. As we noted earlier, this motion did not challenge the applicability of the tariff or Warsaw Convention limitations periods. The first document in which Korba raised this issue was a memorandum filed on August 21, which was the day upon which the trial court entered its order denying the motion to correct error and which was some ninety-four days after the trial court entered judgment.

■ In some circumstances, we might view this document as an amendment to the motion to correct errors, but we cannot do so here. A motion to correct error may be amended or supplemented at any time up to the expiration of the sixty day filing period, but the trial court is without jurisdiction to accept amendments or supplements to the motion after the time period has elapsed. *In re Adoption of H.S.* (1985), Ind.App., 483 N.E.2d 777. As Judge Neal wrote "[t]imely filing is a jurisdictional act and *is an absolute precondition to appeal." Id.* at 780. (emphasis added.)

Here Korba did not file his memorandum within the sixty day period. The trial court was without jurisdiction to consider any of the errors alleged in the memorandum. Consequently, Korba has waived those errors before the trial court and before us. We cannot consider the question of whether these limitations periods were applicable, and we must proceed under the assumption that they are applicable.

■ Korba also argues TWA waived application of the limitations periods since such periods are in the nature of affirmative defenses and must be specifically pled. He claims TWA only raised the defense of a statute of limitations, and according to

---

**1.** We consider Korba's motion to consist not only of the document specifically denominated "Motion to Correct Errors", but also the at-tached "Statement of Facts and Grounds in Support of Motion to Correct Errors." T.R. 59(D)(2).

*L.B. Smith v. Circle Air Freight Corp.* (1985), 128 Misc.2d 12, 488 N.Y.S.2d 547, the Warsaw Convention limits are not a statute of limitations. Korba asserts they are contractual limitations and, because TWA did not plead contractual limitations, its defense is waived.

TWA, in its answer, raised several affirmative defenses. The second of these defenses states Korba's claim is barred by the statute of limitations, and refers to TWA's exhibits A and B. These exhibits expressly incorporate both the limitations contained in the federal tariff and those contained in the Warsaw Convention. Our rules require only that:

> "All pleadings shall be so construed to do substantial justice, lead to disposition on the merits, and avoid litigation of procedural points." T.R. 8(F).

Here, the defense as pled gave Korba fair notice of what limitations periods formed the basis of the defense. We cannot say that TWA waived the defense.

### II. *Was This Action Filed In Time?*

Korba argues that he filed suit within the two years of the alleged breach and, thus, his suit is not time barred even if the Warsaw Convention limitations period applies to his case. The convention provides:

> "The right to damages shall be extinguished if an action is not brought within 2 years, reckoned from the date of arrival at the destination, or from the date on which the aircraft ought to have arrived, or from the date on which the transportation stopped." Convention for Unification of Certain Rules Relating to International Transportation by Air, Article 29, 1939, 49 Stat. 3000.

Korba alleges the second measuring event, the date upon which the aircraft ought to have arrived, is the appropriate measuring event because the aircraft upon which his party *ought* to have flown—El Al flight 1009—*ought* to have arrived in New York on August 1. Korba maintains the limitations period did not expire until August 2, 1985. He filed this suit on August 1, 1985.

TWA argues that Korba was not entitled to use the second measuring event to begin the running of the limitations period. If either the first or third measuring event is appropriate, the limitations period would have expired before August 1, and Korba's suit would be barred.

Korba advances two arguments for the application of the second measuring event. He first argues he is entitled to use *any* of the three measuring events. In support of this assertion, he cites *Alltransport, Inc. v. Seaboard World Airlines* (N.Y.Civ.Ct. 1973), 76 Misc.2d 308, 349 N.Y.S.2d 277, in which the court stated, "[s]ince the disjunctive 'or' is used it must follow the plaintiff can maintain this action if brought within two years of any of [the] three events...." 76 Misc.2d 308, 349 N.Y.S. at 279.

■ We do not agree with the New York Civil Court. If we were to accept this view, we would in effect be conceding the plaintiff is entitled to choose the measuring event which is most advantageous in his particular case. The Federal District Court for the Central District of Illinois rejected this view, noting:

> "Surely the dates set out in Article 29(1) are not intended as alternatives that leave plaintiffs to choose the one that most extends the limitations period. Rather they are obviously designed to provide for the different circumstances under which a claim against an air carrier might arise." *Magnus Electronics, Inc. v. Royal Bank of Canada* (C.D.Ill. 1985), 611 F.Supp. 436, 441.

The court continued, "[t]heir clear import is that *at the latest* the limitations period begins to run once a party with enforceable rights under a carriage contract knows or has reason to know something has gone wrong with the shipment, be it misdelivery, loss, or delay." *Id.* (emphasis added.) We agree with the federal court that the plaintiff is not free to choose the most advantageous measuring event, but is instead bound by that event which corresponds to his discovery of a problem.

Korba next argues the second measuring event is the only appropriate one for this case. He again cites *Alltransport, supra,* which states the first and third measuring events are only properly applied in personal injury suits. Furthermore, he argues the first and third measuring events only apply

to causes of action arising out of "actual problems on a certain flight or carriage." Since his complaint is not for any such problem, but for what he claims "ought" to have occurred, he argues we must apply the second measuring event in this case. Finally, he notes that, where a treaty admits of two constructions, one restrictive of the rights granted thereunder and the other favorable to those rights, the favorable construction is preferred. *Dalton v. Delta Airlines, Inc.* (5th Cir.1978), 570 F.2d 1244. Thus he argues we should interpret the convention so as to give him access to the most favorable measuring event.

 We are not persuaded by Korba's argument. The first and third measuring events are not solely applicable to actions for personal injury. *See Magnus Electronics, supra; Rush v. U.S. Air, Inc.* (1984), 19 Ohio App.2d 301, 484 N.E.2d 196. In *Magnus Electronics*, the court refused to apply the second measuring event to delay the running of the limitations period even though the plaintiff sought compensation for a premature delivery of goods and not for a personal injury. Similarly, in *Rush* the Ohio Court of Appeals applied the first measuring event where the plaintiff's sole claim was for lost baggage. These cases convince us that the first and third measuring events may be applied in all appropriate instances, and not just in cases seeking compensation for personal injuries.

Furthermore, we do not agree with Korba's assertion that the first and third measuring events apply only to "claims involving actual problems on a certain flight or carriage." In *Magnus Electronics* the court used these measuring events even though the plaintiff did not allege any problems with the actual flight. In that case the plaintiff sought recovery for premature delivery of goods by a shipper, but the court did not find itself constrained to use the second measuring event.

Finally, we reject Korbas argument that the second measuring event is appropriate

because it is the only event which is conditional, that is it is the only one which speaks in terms of what *ought* to have happened but did not. Korba, however, misinterprets this measuring event. Article 29(1) reads, in relevant part, "or from the date on which the aircraft ought to have arrived...." This measuring event addresses those instances in which an airplane was due to arrive on a certain date, but either arrived late or failed to arrive at all. This measuring event has nothing whatsoever to do with whether a particular passenger ought to have been on a particular flight.

 We believe the court in *Magnus Electronics* stated the correct test for determining which of the measuring events is proper for a particular case. The court said, 'the clear import [of the measuring events] is that *at the latest* the limitations period begins to run once a party with enforceable rights has reason to know something has gone wrong....' *Magnus Electronics, supra,* at 441 (emphasis in original).[2]

 Here, Korba's transportation on the TWA–El Al excursion effectively stopped when El Al informed him that it would not honor his party's tickets on the Tel Aviv to New York leg of the trip. He was aware that this transportation on El Al had stopped no later than July 30, 1983, the day his party flew back to New York on TWA. He filed this action on August 1, 1985, more than two years after he became aware that his transportation had stopped. His suit is therefore barred by the Warsaw Convention limitations period, and we must affirm the summary judgment of the Vanderburgh Superior Court.

Affirmed.

HOFFMAN and YOUNG, JJ., concur.

---

**2.** This test has also been accepted in Illinois. The Illinois Court of Appeals held, in a case involving the loss of some cargo, that the limitations period began to run once the plaintiff became aware of a problem. *Chandler v. Jet Air Freight, Inc.* (1977), 54 Ill.App.3d 1005, 12 Ill. Dec. 472, 370 N.E.2d 95. The court followed this holding in *Srivastava v. Alia Airline* (1985), 129 Ill.App.3d 988, 473 N.E.2d 564, where the court again began the running of the limitation period on the date upon which the plaintiff became aware of a problem.